IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael Cornelius, | ) | C/A No. 3:13-1018-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| John M. McHugh, Secretary of the Army, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Michael Cornelius ("Cornelius"), a self-represented federal employee,[1] filed this action raising claims under the Whistleblower Protection Act of 1989 ("Whistleblower Act"), and claims of employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion to dismiss. (ECF No. 24.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Cornelius of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion. (ECF No. 26.) Cornelius filed a response in opposition to the defendant's motion to dismiss (ECF No. 29), the defendant filed a reply (ECF No. 31), and Cornelius filed a sur-reply (ECF No. 33).[2] Having reviewed the parties'

---

[1] Cornelius indicates that he is an employee of a non-appropriated fund instrumentality. (ECF No. 1 at 1; ECF No. 29-1 at 3.)

[2] The Local Rules make no provision for sur-replies. Further, under Local Civil Rule 7.07 DSC, "[r]eplies to responses are discouraged."



submissions and the applicable law, the court finds that the defendant's motion to dismiss should be granted in part and denied in part.

## BACKGROUND

Cornelius's Complaint alleges that he filed a harassment and gender discrimination charge against the defendant with the Fort Jackson Equal Employment Opportunity Office on January 27, 2011. (ECF No. 1 at 3.) Cornelius claims that he received a "reprisal annual performance appraisal for the rating period ended on February 28, 2011 . . . for making protected disclosures." (Id. at 3-4.) Cornelius alleges that, prior to the first reprisal, he was receiving " '[e]xcellent' rating annual performance appraisals, included with annual merit monetary pay increases." (Id. at 4.) Cornelius asserts that he timely filed a request to amend his "filed EEO administrative charge" to "add Reprisal, and Whistleblower complaint" after his receipt of the "negative lower rating annual performance appraisal." (Id. at 2.) However, Cornelius claims that the "EEO officer" denied his request to amend. (Id.) Cornelius alleges that he filed a complaint with the United States Office of Special Counsel, which dismissed it for lack of "jurisdiction over the matter." (Id.) Cornelius claims that he then filed a Whistleblower complaint with the Inspector General of the Department of Defense, who conducted and completed an investigation but failed to issue Cornelius a copy of the final decision or investigative report. (Id. at 2-3.) Cornelius asserts that he requested help from United States Senator Lindsey Graham and later received a copy of the Department of Defense's investigative report, which allegedly found that Cornelius had been subject to reprisal and retaliation for reporting a "protected disclosure" and issued "specific instructions for the Army to comply." (Id. at 3.) Cornelius purportedly received another reprisal annual performance appraisal for the period ending on February 28, 2013. (Id. at 4.) Thus, the Complaint asserts unlawful employment practices



by the defendant to include a violation of "Non-Appropriated Fund Instrumentality (NAF) Employee Whistleblower Protection" and retaliatory harassment in violation of Title VII. (Id. at 1, 4-5.)

**DISCUSSION**

A.   **Rule 12(b)(1) Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

B.   **Title VII**

   1.   **Administrative Remedies for Federal Employees**

Title VII creates a right of action for employees alleging "discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Federal employees alleging discrimination "must, however, exhaust their administrative remedies before exercising this right." Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006). A federal employee does so by first contacting



an Equal Employment Opportunity ("EEO") counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If, after meeting with a counselor, the employee wishes to continue with the complaint process, he must file a formal complaint, which the agency must investigate. 29 C.F.R. §§ 1614.106, 1614.108.

The United States Court of Appeals for the Fourth Circuit has summarized the process by which a federal employee may seek relief from unlawful discrimination as follows:

> A federal employee who believes that his employing agency discriminated against him in violation of Title VII must file an administrative complaint with the agency. See 29 C.F.R. § 1614.106. The agency investigates the claim, see 29 C.F.R. § 1614.108-109, and, if it concludes there was no discrimination, it issues a final agency decision to that effect, see 29 C.F.R. § 1614.110.

Laber, 438 F.3d at 416. The Fourth Circuit further noted that a federal employee may then appeal the agency's decision to the Office of Federal Operations ("OFO") of the Equal Employment Opportunity Commission ("EEOC") or may "opt-out of the administrative process at this point by filing a de novo civil action." Id. at 416 & n.9 (citing 29 C.F.R. §§ 1614.407(a), 1614.407(c); 42 U.S.C. § 2000e-16(c)). If the employee chooses to appeal the decision to the EEOC, the employee may file a civil action with the district court after 180 days have elapsed from the filing of the appeal with the Commission or within 90 days of receiving the Commission's final decision. 29 C.F.R. § 1614.407(c) & (d). Untimeliness of an administrative charge or a complaint in federal court does not deprive the federal court of subject matter jurisdiction; rather, these deadlines, like a statute of limitations, are subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Laber, 438 F.3d at 429 n.25. By contrast, the Fourth Circuit has held that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim

deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

### 2. Procedural Requirements

In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). "A plaintiff's [administrative] charge defines the scope of [his] subsequent right to institute a civil suit." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original administrative charge and were therefore time barred).

The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation. First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning. Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.



Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe the [EEO or] EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely [administrative] charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation marks and citations omitted). Therefore, a discrimination suit "is limited to discrimination charged in" the administrative claim or "to discrimination actually found by the [agency] upon investigation of the original charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994). When a discrimination claim "exceed[s] the scope of the [administrative] charge and any charges that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995).

"At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs. While it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012). The Fourth Circuit has recently discussed the parameters for when different unlawful employment practices are considered "reasonably related" to those raised in an administrative charge. For example, "where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,'" the charges are reasonably related and may be advanced in a subsequent civil suit. Id. (quoting Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir.1981)). Similarly, courts have permitted a claim raised in litigation that was not specifically described in the administrative charge to go forward "where both the [administrative]

charge and the [federal] complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." Id. (citing Smith, 202 F.3d at 248). On the other hand, when the claim raised in the district court litigation involves a different *form* of unlawful employment practice than the one described in the administrative charge, courts have found the claim not to be administratively exhausted. See, e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300-01 (4th Cir. 2009) (finding that claims of age, sex, and race discrimination were not exhausted where a charge alleged only retaliation); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (finding that claims of sex and color discrimination were not exhausted where a charge alleged only racial discrimination); Riley v. Tech. & Mgmt. Servs. Corp., Inc., 872 F. Supp. 1454, 1459-60 (D. Md. 1995) (finding that claims of sexual harassment and retaliation were not exhausted where a charge alleged only gender discrimination).

In regards to retaliation, the Fourth Circuit has held that a plaintiff asserting a Title VII claim of retaliation for filing a previous administrative charge is not required to separately exhaust administrative remedies with regard to that retaliation claim. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). The holding is based in part on the reasoning that a plaintiff who has already been retaliated against for exercising his Title VII rights need not risk additional retaliation by filing a second administrative charge. Id. at 590. Thus, Nealon essentially created an exception to the general rule that all discrete acts of discrimination must be separately exhausted.

That exception does not apply, however, when the alleged retaliatory acts occurred *before* the plaintiff filed a charge of discrimination. See Wilson v. Dimario, No. 97-2252, 1998 WL 168346, at *2 (4th Cir. Mar. 31, 1998) (*per curiam*) (holding that the ruling in Nealon does not apply to an allegation of retaliation that occurred prior to the filing of an administrative charge). For

example, courts have specifically held that when a claim of retaliation could have been raised in an earlier administrative charge, such a claim must be administratively exhausted or it is procedurally barred. See Riley, 872 F. Supp. at 1459-60 (finding that where an act of retaliation occurred prior to the filing of administrative charge and the plaintiffs failed to allege retaliation, the retaliation claim was not administratively exhausted), aff'd, 79 F.3d 1141 (4th Cir. 1996); see also McMillan v. S.C. Dep't of Corr., 16 F. Supp. 2d 635, 646 (D.S.C. 1997) (holding that where a charging party could have raised allegations of retaliation at the time she filed her charge, exhaustion of administrative remedies with respect to that charge is required), aff'd, 153 F.3d 721 (4th Cir. 1998). Further, the Nealon exception has been found inapplicable where the alleged retaliation occurred after a plaintiff filed his first administrative charge, but before he filed subsequent charges of discriminatory conduct. See Fowler v. S.C. Dep't of Corr., C/A No. 3:10-3230-JFA, 2013 WL 876407, at *3 (D.S.C. Mar. 8, 2013) (citing Smith v. Potter, C/A No. 1:09CV587, 2010 WL 5288183, at *10 (M.D.N.C. Dec. 17, 2010)).

### 3. Cornelius's Title VII Claims

Cornelius appears to seek judicial redress for retaliatory acts that have occurred since the filing of his administrative charge on January 27, 2011. (See generally ECF No. 1 at 2-5.) The defendant argues that the Complaint fails to allege exhaustion of administrative remedies for any Title VII "sex discrimination or harassment or reprisal" claims associated with Cornelius's "adverse ratings for periods ending February 28, 2011, and February 28, 2013." (ECF No. 24-1 at 4.) The defendant attaches to the motion a Negotiated Settlement Agreement ("Agreement") signed by Cornelius on March 27, 2013. (ECF No. 25.) The Agreement indicates that the defendant agreed to change Cornelius's first and second line supervisors and ensure proper supervisor training in

exchange for Cornelius's withdrawal of a "formal EEO complaint dated September 26, 2012, as amended on March 13, 2013." (Id. at 1.)

Cornelius's response in opposition to the motion to dismiss alleges that he attempted to amend his original EEO administrative complaint to add his reprisal claim; however, the "EEO agency refused to process" this complaint against the defendant. (ECF No. 29-1 at 4.) Cornelius's response appears to refer to the EEO's alleged refusal to allow him to amend his original 2011 administrative complaint to add a reprisal claim associated with the adverse performance ratings for th period ending in February of 2011. (ECF No. 1 at 2.) However, Cornelius's response does not dispute the Agreement indicating that he filed a subsequent EEO complaint in 2012. (ECF No. 29-1.)

As discussed above, Nealon permits a federal court plaintiff to assert a retaliation claim which arose *after* the filing of an administrative charge without separately exhausting that post-charge retaliation claim. See Nealon, 958 F.2d at 590. However, Nealon does not appear to support the proposition that a claim asserting retaliation for filing an administrative charge does not have to be included in a subsequent EEO complaint alleging other discrete acts of discrimination that occurred after the first administrative charge. See Fowler, 2013 WL 876407 at *3. In this case, Cornelius alleges that he received negative performance ratings on February 28, 2011, and February 28, 2013. (ECF No. 1 at 3-4.) The undisputed evidence further reflects that Cornelius filed a subsequent EEO charge in September of 2012, which he amended on March 13, 2013.[3] (ECF No. 25.) Because Cornelius could have timely raised his retaliation claim associated with the February

---

[3] The Agreement lists several instances of reprisal but does not include any reference to issues regarding negative performance ratings. (ECF No. 25.)



2013 ratings in his March 2013 EEO amended charge, the defendant's motion to dismiss the February 2013 reprisal claim for lack of exhaustion should be granted. See Charlot v. Donley, C/A No. 3:11-579-MBS-SVH, 2013 WL 5495305, at *5 n.4 (D.S.C. July 11, 2013) (finding Nealon exhaustion exception for a retaliation claim "unavailing [] where Plaintiff has filed a subsequent charge of discrimination that could [] include claims of retaliation that were not exhausted in her first charge"), adopted by 2013 WL 5503700 (D.S.C. Sept. 30, 2013). However, the record does not similarly contain evidence showing that Cornelius's reprisal claim associated with the February 2011 negative performance evaluation could have been properly raised in a subsequent administrative charge. See 29 C.F.R. § 1614.105(a)(1) (requiring aggrieved party to bring employment complaint to an EEO counselor within forty-five days of the complained of occurrence). Therefore, this reprisal claim appears to fall within the Nealon exception and Cornelius would not have been required to separately exhaust it. See Nealon, 958 F.2d at 590. Accordingly, Cornelius's Title VII claim related to this 2011 negative performance evaluation should not be dismissed for failure to exhaust administrative remedies.[4]

**C.     Whistleblower Protection Act**

The defendant further alleges that the court lacks subject matter jurisdiction over Cornelius's Whistleblower Act claim. (ECF Nos. 24-1, 31.) Cornelius's response in opposition to the motion to dismiss indicates that, as a non-appropriated fund ("NAF") employee, he "obtains whistleblower protection from Title 10 U.S.C. Section 1587 (Supp. 1996)." (ECF No. 29-1 at 3.) Cornelius further

---

[4] The court observes that it is questionable whether Cornelius's claim associated with the 2011 performance evaluation would be timely; however, untimeliness does not deprive the court of subject matter jurisdiction and is a defense that can be waived. Zipes, 455 U.S. at 393. The defendant has not raised the issue of timeliness in its motion to dismiss.



claims that he contacted the Department of Defense with his Whistleblower Act complaint because review with the Merit System Protection Board ("MSPB") would have been improper due to his employment status. (Id.)

Cornelius appears to be correct in his position that NAF employees are excluded from MSPB protection.[5] See 5 U.S.C. § 2105(c); see also Clark v Merit Sys. Prot. Bd., 361 F.3d 647 (Fed. Cir. 2004) (upholding MSPB's decision that it lacked subject matter jurisdiction over NAF employee claims). Cornelius also correctly argues that, as an NAF employee, his course of redress for a Whistleblower Act claim lies under § 1587, which vests responsibility for prevention of prohibited actions in the Secretary of Defense. See 10 U.S.C. § 1587(d); Anderson v. McHugh, C/A No. 3:10-2137-JFA-PJG, 2011 WL 2731211, at *3 (D.S.C. Apr. 22, 2011), adopted by 2011 WL 2731246 (D.S.C. July 13, 2011). However, § 1587 does not provide for judicial review in federal district court. See Anderson, 2011 WL 2731211 at *3 (citing Hooks v. Army & Air Force Exchange Serv., 944 F. Supp. 503, 507 (N.D. Tex. Aug. 14, 1996); see also Burrell v. U.S. Postal Serv., 164 F. Supp.2d 805, 813 (E.D. La. Apr. 16, 2001) ("[A]n employee aggrieved by a violation of the [Whistleblower Act] must seek administrative remedies as opposed to filing suit in district court. The Act confers no subject matter jurisdiction on a federal district court to entertain such a claim.") (citations omitted). Accordingly, the defendant's motion to dismiss Cornelius's Whistleblower Act claim for lack of subject matter jurisdiction should be granted.

---

[5] In addition, the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), prevents NAF "employees from obtaining judicial review of an adverse employment decision" under the Administrative Procedures Act ("APA"). Mann v. Haigh, 120 F.3d 34, 37-38 (4th Cir. 1997).

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendant's motion to dismiss be granted as to Cornelius's Whistleblower Act claim and Title VII claim associated with the February 2013 negative performance rating. (ECF No. 24.) However, it appears that the court has subject matter jurisdiction over Cornelius's Title VII claim relating to the February 2011 negative performance evaluation. (Id.) The court therefore recommends that the defendant's Rule 12(b)(1) motion be denied as to that claim.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 28, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).