IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael Cornelius, | ) | C/A No. 3:13-1018-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| John M. McHugh, *Secretary of the Army*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Michael Cornelius, a self-represented federal employee,[1] filed this action asserting violations under the Whistleblower Protection Act of 1989 ("Whistleblower Act"), 10 U.S.C. § 1587, and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e, et seq.[2] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 79.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Cornelius of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion. (ECF No. 80.) Cornelius filed a response in opposition to the defendant's motion for summary judgment (ECF No. 85) and a supplement to the response (ECF No. 88). The defendant filed a reply (ECF No. 94). Cornelius's motion for a hearing (ECF No. 69) and motions

---

[1] Cornelius indicates that he is an employee of a non-appropriated fund instrumentality. (Compl. at 1, ECF No. 1 at 1.)

[2] The court dismissed some of Cornelius's Title VII claims and all of his claims under the Whistleblower Act in a previous order. (Order, ECF No. 62.)



to strike (ECF Nos. 82, 84)³ are also before the court.  Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted and Cornelius's motions should be denied.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Cornelius to the extent they find support in the record.  (See generally Compl. at 1-5, ECF No. 1 at 1-5.) Cornelius alleges that he filed a harassment and gender discrimination charge against the defendant with the Fort Jackson Equal Employment Opportunity Office on January 27, 2011.  (ECF No. 1 at 3.)  Cornelius claims that he received a "reprisal annual performance appraisal for the rating period ended on February 28, 2011 . . . for making protected disclosures." (Id. at 3-4.)  Cornelius alleges that, prior to the first reprisal, he was receiving " '[e]xcellent' rating annual performance appraisals, included with annual merit monetary pay increases." (Id. at 4.)  Cornelius asserts that he timely filed a request to amend his "filed EEO administrative charge" to "add Reprisal, and Whistleblower complaint" after his receipt of the "negative lower rating annual performance appraisal." (Id. at 2.) However, Cornelius claims that the "EEO officer" denied his request to amend.  (Id.)  Cornelius asserts that he then filed a Whistleblower Act complaint with the Department of Defense, which

---

³ Cornelius asks this court to strike the defendant's motion for an extension of time to file dispositive motions.  (ECF No. 82.)  Cornelius further asks the court to strike his deposition, which the defendant submitted in support of its summary judgment motion (ECF No. 84).  Cornelius's motion to strike the deposition indicates that he received notification from the court reporter that the transcript was ready for Cornelius to read.  (Id. at 1; see also ECF No. 84-1.)  It is unclear from the motion whether Cornelius responded to the court reporter's letter, or why he alleges that the defendant's use of the deposition violates Rule 30(e) of the Federal Rules of Civil Procedure. Accordingly, this motion is denied.



found that Cornelius had been subject to reprisal and retaliation for reporting a "protected disclosure" and issued "specific instructions for the Army to comply." (Id. at 2-3.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Avenues of Proof in Title VII Cases**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through either of two avenues of proof.  First, he may establish his claims by presenting "sufficient evidence, direct or circumstantial, 'for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice.' " Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*) (quoting Desert Palace Inc. v. Costa, 539 U.S. 90 (2003)).  "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when such evidence of discriminatory animus is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins.

Page 4 of  15



Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer



unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Cornelius's Title VII Retaliation Claims**

To establish a *prima facie* case of retaliation, a plaintiff typically must show:  (1) that he engaged in protected activity; (2) that his employer acted adversely against him; and (3) there was a causal connection between the asserted adverse action and the protected activity. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

To establish that he suffered an adverse action with respect to a retaliation claim, a plaintiff must show that the adverse action was objectively material. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Thus, to fall within the provision's protection, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Id. (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir.

2006)). Because "Title VII . . . does not set forth 'a general civility code for the American workplace,' " a plaintiff must show material adversity "to separate significant from trivial harms." Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). The test is an objective one, which considers whether the challenged action was material from the perspective of a reasonable person in the plaintiff's position. Id. While the United States Supreme Court has held that Title VII's prohibition on adverse action taken in retaliation for protected activity "is not limited to discriminatory actions that affect the terms and conditions of employment," the anti-retaliation provision does not shield an employee from all retaliation. Id. at 64. Instead, an employee is protected only from retaliation that produces injury or harm. Id. at 67. Further, the standard analyzes the challenged retaliatory act, not the underlying conduct that gave rise to the Title VII complaint. Id. at 69.

    1.  February 28, 2011 Performance Evaluation

Cornelius asserts that he filed a harassment and gender discrimination charge with the EEO on January 27, 2011 and received a "reprisal annual performance appraisal rating" for the appraisal period ending on February 28, 2011. (Compl. at 3-4, ECF No. 1 at 3-4.) Applying the standards above to the facts and record in this case, Cornelius does not meet the *prima facie* test for this alleged discrete act of retaliation. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) (noting the difference between "discrete discriminatory acts and hostile work environment claims"). It is undisputed that Cornelius received a lower, but "satisfactory," performance rating for the period ending on February 28, 2011. (See Performance Review, ECF No. 79-11). However, Cornelius does not provide evidence to demonstrate that this performance evaluation could be considered an objectively material adverse action. White, 548 U.S. at 68. Cornelius fails to show

PJG

that the February 2011 appraisal in any way dissuaded him from "making or supporting a charge of discrimination," or would have dissuaded a reasonable person in his position. Id. In fact, Cornelius asserts that he timely sought to amend his EEO administrative charge to add a claim related to the "received negative lower rating annual performance appraisal." (Compl. at 2; ECF No. 1 at 2.) Further, it is undisputed that Cornelius filed a separate EEO Complaint in September of 2012 and an amendment to that EEO Complaint in March of 2013. (Sept. 26, 2012 EEO Compl. at 1-2, ECF No. 79-16 at 1-2; Mar. 13, 2013 Amend. to EEO Compl. at 1, ECF No. 79-18 at 1.)

Cornelius also fails to demonstrate that the February 2011 performance appraisal resulted in any type of injury, and courts within the Fourth Circuit have generally found that actions which essentially amount to criticism of an employee such as performance evaluations, reprimands or warnings, and counseling are alone insufficient to constitute materially adverse employment actions under the White standard. See Parsons v. Wynne, 221 F. App'x 197, 198 (4th Cir. 2007) (affirming district court's grant of summary judgment to the defendant on a retaliation claim where "neither [plaintiff's] performance evaluation nor her removal from the alternate work schedule would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination' ") (quoting White, 548 U.S. at 68); Lindsey-Grobes v. United Airlines, Inc., C/A No. GJH-14-00857, 2014 WL 5298030, at *11 (D. Md. Oct. 14, 2014) (finding that poor performance reviews, without allegation of injury, were insufficient to constitute a materially adverse action); Charlot v. Donley, C/A No. 3:11-579-MBS, 2014 WL 1319182, at *9 (D.S.C. Mar. 31, 2014) (finding that an unsuccessful performance evaluation, absent any allegations of detrimental impact, was insufficient to demonstrate a materially adverse action); Altman v. McHugh, C/A No. 5:11cv00061, 2012 WL 1190271, at *17-18 (W.D. Va. Apr. 9, 2012) (same); Rease v. Zax, Inc., C/A No. 3:07-3601, 2009

WL 2998977, *7 (D.S.C. Sept. 17, 2009) (holding that warning notices and a poor performance review did not constitute a material adverse action under Title VII where they would not "deter a reasonable employee from initiating a charge of discrimination").

In his response, Cornelius generally asserts that a report, issued by the Inspector General in the Whistleblower Act case, creates a genuine issue of material fact in the instant action and precludes the court from granting the defendant's motion for summary judgment. (Pl.'s Resp. Opp'n Summ. J. at 4-8, ECF No. 85 at 5-9; see also May 22, 2012 Inspector Gen. Report at 1-8, ECF No. 85-4 at 3-10.)  However, while the Inspector General's findings determined that Cornelius's downgraded annual performance evaluation constituted reprisal under the Whistleblower Act, they do not establish that the February 2011 appraisal constituted a materially adverse action in violation of Title VII.  Specifically, the Inspector General's report fails to show that the evaluation at issue would have dissuaded a reasonable person in Cornelius's position from "making or supporting a charge of discrimination." White, 548 U.S. at 68.  Further, the report provides no indication that the February 2011 appraisal resulted in any injury to Cornelius. Id. at 64.  Therefore, the court finds that Cornelius has failed to establish a *prima facie* case of retaliation based on the record in this case as analyzed under the applicable Title VII standards. Id. at 68-70.  Accordingly, the court concludes that no reasonable jury could find that Cornelius's February 2011 performance evaluation constitutes retaliation under Title VII and the defendant's motion for summary judgment should be granted as to Cornelius's claims associated with that appraisal.

    **2.     Retaliatory Harassment**

Cornelius further alleges retaliatory harassment which created a "hostile and abusive work environment." (Compl. at 5, ECF No. 1 at 5.)  "Retaliation claims under Title VII can be based on



an employer's retaliatory creation of a hostile work environment." Fordyce v. Prince George's Cnty., 43 F. Supp. 3d 537, 552 (D. Md. 2014) (citing Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001), overruled on other grounds by White, 548 U.S. at 67-68)). However, a plaintiff "must show a *prima facie* case for retaliation, including evidence that [his] employer's adverse actions amount to a hostile work environment." Id. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008). Moreover, federal employment statutes are not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that: "(1) he experienced unwelcome harassment; (2) the harassment was based on [a protected characteristic or protected activity]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." See Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006); see also Wells v. Gates, 336 F. App'x 378, 386-87 (4th Cir. 2009) (applying hostile work environment elements discussed in Baqir to a claim of retaliation under Title VII); Fordyce, 43 F. Supp. 3d at 552 n.10.

To establish a claim of retaliation, a plaintiff must show that "but for" his protected activity, he would not have been a victim of harassment. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533, 2534 (2013) ("Title VII retaliation claims must be proved according to traditional

principles of but-for causation," which means "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). Moreover, in a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment. Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

The defendant argues that Cornelius fails to demonstrate severe or pervasive harassment sufficient to constitute a hostile work environment. (Def.'s Mot. Summ. J. at 13-15, ECF No. 79-1 at 13-15.) In response, Cornelius submits an affidavit from a co-worker, Tonia Cheeks. (Pl.'s Resp. Opp'n Summ. J. at 9, ECF No. 85 at 10.) Cheeks's affidavit discusses a "power struggle between managers" that placed unnecessary stress on Cornelius, and his apparent withdrawal from staff events after allegedly being told not to socialize with other employees while "on the clock." (Cheeks Aff. at 2, ECF No. 85-6 at 2.) Cheeks also recounts instances where Cornelius's manager repeatedly walked by the staff lounge and looked into the windows when Cornelius was present. (Id. at 3.)

However, Cornelius presents no evidence to establish that the defendant's actions constituted physical threats, resulted in humiliation, or unreasonably interfered with Cornelius's work performance. See Harris, 510 U.S. at 23. Further, Cheeks's affidavit provides no indication that any of the incidents discussed were related Cornelius's filing of an EEO Complaint, or any other protected conduct.[4]  See Baqir, 434 F.3d at 745-46. Thus, such incidents do not demonstrate the type of "discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive" to create a hostile work environment. See Harris, 510 U.S. at 23; see also Wells, 336 F. App'x at 388 (finding that the plaintiff "may have subjectively perceived his work environment to be hostile, but fail[ed] to demonstrate that the alleged harassment was objectively hostile and abusive"). Accordingly, the court finds that Cornelius does not meet the *prima facie* test for retaliatory harassment, and no reasonable jury could find that Cornelius was subjected to retaliation resulting from the creation of a hostile work environment. Therefore, the defendant's motion for summary judgment should be granted as to Cornelius's retaliatory harassment claim.

### 3.     Other Claims

To the extent Cornelius asserts any other Title VII claims in this action, it is undisputed that he entered into a Negotiated Settlement Agreement with the defendant pertaining to the discrimination and retaliation claims presented in the January 27, 2011 EEO Complaint, September 26, 2012 EEO Complaint, and March 13, 2013 EEO Complaint amendment. (See Negotiated Settlement Agreements, ECF Nos. 79-12, 79-19.) Under the terms of the Negotiated Settlement

---

[4] The court notes that the Inspector General's report in Cornelius's Whistleblower Act case indicates that only the claims regarding Cornelius's lowered performance appraisal were investigated. (See Inspector Gen. Report at 3, ECF No. 85-4 at 5.) Thus, that report fails to provide any support for Cornelius's claims of retaliatory harassment.



Agreements, Cornelius agreed to "waive his right to pursue administrative or judicial action in any forum concerning the matters raised" in the EEO Complaints. (Id.) Therefore, as argued by the defendant, Cornelius is barred from raising the claims of discrimination and retaliation presented in those EEO Complaints in this civil action. See Rock v. McHugh, 819 F. Supp 2d 456, 467-68 (D. Md. 2011) (holding a plaintiff's claims "indisputably barred" where he entered a negotiated settlement agreement). Accordingly, the defendant is entitled to summary judgment as to any other Title VII claims Cornelius may be asserting in this case.

### D.     Whistleblower Protection Act Retaliation Claims

Cornelius's supplemental response in opposition to the defendant's motion for summary judgment asks the court to reinstate his Whistleblower Act claims under 10 U.S.C. § 1587. (See Pl.'s Supp. Resp. Opp'n Summ. J. at 1, ECF No. 88 at 1.) However, as argued by the defendant, the court previously determined in this case that Cornelius's Whistleblower Act claims fail as a matter of law because § 1587 does not provide for judicial review in federal district court. See Cornelius v. McHugh, C/A No. 3:13-1018-CMC-PJG, 2014 WL 4536349, at *7 (D.S.C. Sept. 10, 2014) (adopting report and recommendation). Accordingly, to the extent Cornelius seeks to amend the Complaint to reinstate the Whistleblower Act claims, such a request is denied.

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendant's motion to for summary judgment be granted. (ECF No. 79.) The court further recommends that Cornelius's motion for a hearing (ECF No. 69) and motions to strike (ECF Nos. 82, 84) be denied.

                                                  _____
                                                  Paige J. Gossett
                                                  UNITED STATES MAGISTRATE JUDGE

May 15, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).