IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael Cornelius, | ) | C/A NO. 3:13-1018-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **FINDINGS OF FACT** |
| v. | ) | **AND** |
| | ) | **CONCLUSIONS OF LAW** |
| John M. McHugh, Secretary, Department of the Army, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter came before the court for non-jury trial on August 18, 2015. Plaintiff proceeded *pro se*; Defendant was represented by Assistant United States Attorneys Terri Hearn Bailey and Christopher Gibbs. The court makes the following findings of fact and conclusions of law.

**I. JURISDICTION**

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-3(a). The matter for trial was Plaintiff's claim of retaliation based on his annual performance appraisal for the period ending February 28, 2011.

**II. BURDEN OF PROOF**

This matter is civil in nature. Accordingly, Plaintiff has the burden of proof and must prove his case by a preponderance of the evidence.

**III. FINDINGS OF FACT**

**A. Background**

1. On February 28, 2008, Plaintiff was hired as a part-time civilian Nonappropriated Funds (NAF) Maintenance Worker/Motor Vehicle Operator, NA 4749-07, at the Child and Youth Services

1

facility located at Fort Jackson, South Carolina. Fort Jackson is an Initial Entry Training Center for the United States Army. Effective February 5, 2009, Plaintiff became a full-time employee Def.'s Ex. #1, Cornelius_OPF_16, OPF_20.

2. Plaintiff's job description provided the following duties: carpentry, electrical work, plumbing, and painting for the routine maintenance and upkeep of the facility, grounds, and equipment. Additional duties and responsibilities included debris removal and other minor grounds maintenance; driving government vehicles, including a 14-passenger van, to pick up and deliver food and to transport children to and from the facility; and delivering and serving meals to the children. Def.'s Ex. #1 at Cornelius_OPF_7.

3. In the course of his employment, Plaintiff received annual performance appraisals. For annual reviews conducted between 2009 and 2013, Plaintiff's rater was his first line supervisor, Sandra Madera (Madera), Director of School Age Programs. Def.'s Ex. #1, Cornelius_OPF_28, OPF_31, OPF_35, OPF_37, and OPF_48.

4. In 2014, Plaintiff's first line supervisor was changed to Jana Chisholm, Imboden Street School Age Center Assistant Director. Def.'s Ex. #1, Cornelius_OPF_47, OPF_45.

5. The approving official for Plaintiff's ratings from 2009 to 2013 was second line supervisor Rose Edmond (Edmond), Division Chief for Child, Youth, and School Services at Fort Jackson. Def.'s Ex. #1, Cornelius_OPF_28, OPF_31, OPF_35, OPF_37, and OFP_48.

6. The approving official for Plaintiff's 2014 and 2015 ratings was second line supervisor Madera. Def.'s Ex. #1, Cornelius_OPF_47, OPF_45.

7. Plaintiff received an annual performance review for the period February 8, 2008 to September 12, 2009 which resulted in an overall rating of "Excellent." Def.'s Ex. #1,

Cornelius_OPF_27.

8. Plaintiff received an annual performance review for the period March 1, 2009 to February 28, 2010 which resulted in an overall rating of "Excellent." Def.'s Ex. #1, Cornelius_OPF_30.

9. Army Regulation (AR) 215-3 provides "uniform policies governing personnel management and administration for" NAF instrumentalities employees of the Department of the Army. Def.'s Ex. #11, Cornelius_577. Section 6-7 provides that there are five (5) levels of NAF employee annual performance ratings. An "Excellent" level "clearly exceed[s] the standard for a satisfactory rating and merits consideration for a special achievement award not to exceed 5 percent of annual salary [ ]." A "Satisfactory" rating "is authorized when the employee's performance meets, but does not exceed the standard to the degree required for a rating of excellent. This rating meets acceptable level of competence requirements." Def.'s Ex. #11, Cornelius_645, Sections 6-7(b)(2), (b)(3).

10. An annual performance evaluation of "Excellent" generally entitles an employee to consideration for a Special Achievement Award of up to 5 percent of his or her annual salary. Def.'s Ex. #11, Cornelius_657, Sections 9-3(b)(2), (3).

11. However, receipt of an "Excellent" annual performance rating does not automatically result in nomination for a Special Achievement Award. Def.'s Ex. #3, Cornelius_263, Chapter XIV Section 3(b)(3). The decision whether to recommend such an award is in the discretion of the first line supervisor.

12. Edmond testified that if an employee received an "Unsatisfactory" in any "Factor"

3

category of an annual performance review,[1] the employee would not be eligible for a Special Achievement Award, regardless of whether the scoring of the overall evaluation resulted in a rating of "Excellent."

13. Plaintiff did not receive a recommendation for a Special Achievement Award in 2009 or 2010. He did, however, receive timely within grade increases (WGIs), or "step" increases, and wage rate adjustments. Def.'s Ex. #1, Cornelius_OPF_18, OPF_19, OPF_24, OPF_32, OPF_38, OPF_40, OPF_42.

14. On September 3, 2010, Madera authored a memorandum to Marie Brize, President, American Federation of Government Employees, Local 1909, that beginning October 4, 2010, Plaintiff's duty hours would be changed from 7:00 a.m. to 4:00 p.m. to 8:00 a.m. to 5:00 p.m. This change in duty hours would continue "during the school year." This memorandum noted that Plaintiff's work hours would return to 7:00 a.m. to 4:00 p.m. "for the summer months." Def.'s Ex. #7.

15. On September 29, 2010, Clarissa Richman, assistant to Madera, advised Edmond that Plaintiff had inadvertently exposed a portion of his buttocks to her and she felt the situation presented the possibility of him exposing himself to school age children who were also present. Richman, who was in a supervisory position to Plaintiff on the day in question, attempted to get Plaintiff's attention without causing a scene and calling unwarranted attention to his exposure. She spoke to Plaintiff twice, directing him to accompany her to an area away from the children. However, Plaintiff failed to follow her direction, and instead indicated that if she wished to speak

---

[1]The "factor" categories for the NAF annual performance evaluations are Quality of Work, Quantity of Work, Job Knowledge/Adaptability, Human Relations, Initiative, Dependability, and Customer Relations. See, for example, Defendant's Exhibit #2, Cornelius_OPF_34.

to him, she needed to accompany him to an area outside the building where a bus was parked. When told that he had exposed himself, Plaintiff stated, "Oh, you could have tapped me on the shoulder and told me that – did you like what you see?" Plaintiff's Ex. #6, Cornelius_408.

16. On October 1, 2010, Madera provided a memorandum to Plaintiff advising that beginning October 18, 2010, his duty hours would be changed from 7:00 a.m. to 4:00 p.m. to 8:00 a.m. to 5:00 p.m. Pla.'s Ex. #1.

17. On October 7, 2010, Plaintiff went to the Fort Jackson Equal Employment Opportunity (EEO) Office to inquire about filing EEO charges against Madera and Edmond. Plaintiff was provided with an "Information Required Summary" form and told to contact Edmond and try to resolve his complaints. Pla.'s Ex. #12.

18. On October 8, 2010, Plaintiff met with Edmond and provided her with a written document titled "Adverse Action Complaint." Def.'s Ex. #12.

19. On October 25, 2010, Edmond provided a written response to Plaintiff's October 8 "Adverse Action Complaint." This memorandum provided a two and a half page response to Plaintiff's allegations regarding actions by Madera and compensation issues. Plaintiff received this document on October 25, 2010. Plaintiff indicated in writing on that document that Edmond's response did not satisfy his October 8 "Adverse Action Complaint." Def.'s Ex. #12.

20. On October 29, 2010, Plaintiff, along with his Union Steward,[2] Allison Stephens, presented an oral informal grievance to Edmond. In that grievance, Plaintiff alleged that since

---

[2]Plaintiff is covered by the Negotiated Agreement effective June 29, 1993, between Headquarters, United States Army Training Center and Fort Jackson, Fort Jackson, South Carolina, and Local 1909 American Federation of Government Employees (AFGE) for Nonappropriated Fund Employees, Fort Jackson, South Carolina. Def.'s Ex. 19.

5

October 1, 2010, he had been harassed by Madera, and that the harassment included the following: changing his work hours, threatening his job, not allowing him to make decisions on the job, and not responding to a complaint he had submitted to Madera on or before September 16, 2010. Def.'s Ex. #14.

21. On November 12, 2010, Edmond issued a decision on Plaintiff's Informal Grievance, finding no indication of harassment or retaliation by Madera. Def.'s Ex. #14.

**B. Disciplinary Procedures**

22. A NAF employee is subject to discipline under the Cooperative Improvement Program (CIP). The CIP is part of the Negotiated Agreement (NA) effective June 29, 1993, between Headquarters, United States Army Training Center and Fort Jackson, Fort Jackson, South Carolina, and Local 1909 American Federation of Government Employees (AFGE) for Nonappropriated Fund Employees, Fort Jackson, South Carolina. Def.'s Ex. #19.

23. Article 19 of the CIP addresses Discipline. Article 19.2(b) provides that there are three "formal improvement levels" of discipline: Reminder, Caution Memo, and Decision Day. Def.'s Ex. #19.

24. The first formal level of the NA is a Reminder. The supervisor "will discuss problem with employee using Employee Discussion Guide. Supervisor and employee will agree to plan of corrective action. Employee will be advised that he or she will receive a written memo documenting the reminder and his/her commitment to improve. A reminder will remain active for six months from the date it was given." Def.'s Ex. #19, Article 19.3(c).

25. On November 12, 2010, Madera issued an Employee Discussion Guide (EDG) to Plaintiff. The EDG outlined certain conduct that Madera felt warranted a formal disciplinary

proceeding. Specifically, the EDG addressed the incident on September 29, 2010, when Plaintiff was insubordinate to Richman, and Plaintiff's "pattern of confronting" a co-worker. The EDG advised that Plaintiff was expected to: (1) follow supervisory instructions; (2) refrain from making inappropriate comments to individuals; (3) refrain from making comments to other employees concerning their supervisors; and (4) refrain from making comments about the personal lives of other employees. Additionally, the EDG stated that Madera would issue Plaintiff a "Reminder" memorandum documenting their discussion which would "be effective for a period of 6 months after [Plaintiff's] receipt of that memorandum and if there [was] additional conduct or performance issue[s] during the 6-month period, more severe disciplinary action [would] be taken." Def.'s Ex. #15.

26. On November 15, 2010, in accordance with statements in the EDG, Madera issued Plaintiff a Reminder memorandum memorializing the expectations outlined in the EDG. Plaintiff declined to sign the Reminder acknowledging receipt. Def.'s Ex. #16. The Reminder was placed in Plaintiff's suitability file.

**C. EEO Complaint**

27. On November 15, 2010, after receiving the Reminder memorandum from Madera, Plaintiff returned to the EEO Office. Plaintiff filed an informal complaint of gender discrimination, alleging that he was subjected to harassment and discriminatory treatment on the basis of his sex (male) when his duty hours were changed, when he was issued the EDG, and that he was "constantly harassed by his supervisor." Pla.'s Ex. #2.

28. Plaintiff alleged the discriminating official was Madera. Pla.'s Ex. #2.

29. Madera learned of the EEO complaint no later than December 2010.

30. Plaintiff filed a timely formal EEO complaint as to these claims on January 27, 2011, alleging gender discrimination by Madera. Specifically, Plaintiff contended that Madera's discriminatory actions were: changing his work hours; banning him from writing and use of computer; banning him from using his cell phone during work hours; issuing him an EDG; and forcing him to clock out after discussing work limitations due to a medical condition. Ex. I to Def.'s Motion for Summary Judgment, ECF No. 79-10.

31. Madera prepared Plaintiff's Annual Performance Review and Development Plan (APRDP) for the period March 1, 2010 to February 28, 2011, on or before March 11, 2011. Def.'s Ex. #1, Cornelius_OFP_35.

32. Plaintiff received an overall rating of "Satisfactory" on this APRDP. Def.'s Ex. #1, Cornelius_OPF_34.

33. After he received the "Satisfactory" APRDP, Plaintiff sought to amend his January 2011 EEO complaint to add a claim of retaliation. Plaintiff testified that the EEO officer would not allow him to amend his EEO complaint to include retaliation.

34. On June 24, 2011, Plaintiff and the Army entered into a predetermination Negotiated Settlement Agreement (NSA) to resolve his January 27, 2011, EEO complaint. Under the NSA, the Army agreed to give Plaintiff access to a computer for official duties, to allow Plaintiff to take fifteen (15) minute breaks after Plaintiff had been standing or walking continuously for forty (40) minutes, and to provide a food cart to help Plaintiff avoid prolonged kneeling, squatting, or crawling. The NSA also provided that the Army would re-evaluate the need for the 15-minute breaks and cart on the earlier of 40 days from the date the agreement was signed or when Plaintiff had knee surgery. Pla.'s Ex. #10.

35. In exchange, Plaintiff agreed to notify one of his supervisors when he took breaks; to withdraw his January 27, 2011 EEO complaint; to waive any rights to sue the Army, Fort Jackson, or the Department of Defense (DoD) for any of the allegations made in the January 27, 2011 EEO complaint and not make those matters the subject of future litigation; to waive all claims to any back pay and any other benefits; and to waive a claim to any attorney's fees. The Army did not agree, as part of this NSA, to remove the EDG Reminder from Plaintiff's personnel file. Plaintiff's Ex. #10.

### D. DoD Inspector General Investigation and Finding

36. On July 19, 2011, Plaintiff contacted the DoD whistleblower hotline claiming that he had been subject to whistleblower reprisal for filing the January 27, 2011, EEO complaint, evidenced by the lowered annual appraisal for the period ending February 28, 2011. Plaintiff also complained that the Army was not abiding by the terms of the June 24, 2011, NSA. Def.'s Ex. #2, Cornelius_ROI_4.

37. The Department of Defense Inspector General (DoD-IG) is authorized by statute and DoD directive to conduct whistleblower investigations involving NAF employees. Def.'s Ex. #2, Cornelius_ROI_5. The DoD-IG conducted a timely investigation between July 19, 2011 (the date Plaintiff called the DoD whistleblower hotline) and May 22, 2012 (the date the report was issued). Def.'s Ex. #2.[3]

38. The DoD-IG investigation reviewed a variety of relevant records, including Plaintiff's personnel records, his EEO file, and the 2010 and 2011 ratings for ten other employees under Madera's supervision. A number of witnesses were identified and interviewed, including witnesses favorable to Plaintiff and those identified by management to assess Plaintiff's job performance. The

---

[3]Plaintiff's Annual Performance Review and Development Plan for the period March 1, 2011 to February 28, 2012 resulted in an overall rating of "Satisfactory."

9

investigation concluded that Madera was aware of Plaintiff's informal and formal EEO complaints; that in five of the seven appraisal categories, Plaintiff was rated lower than he had been rated previously; that aside from the EDG dated November 12, 2010, Madera claimed to have notes of informal counseling sessions but failed to provide documentation of any counseling or feedback sessions; and that Plaintiff was "marked down much more severely than all other employees under Ms. Madera's supervision, and even more severely than the one employee [ ] who had been given a coaching and verbal feedback for disciplinary reasons." Def.'s Ex. #2, Cornelius_ROI_9.

    39. In finding that Plaintiff's complaint was substantiated, the report concluded that

> it was not one, but five ratings that decreased from the year prior, and shortly after a protected disclosure where [Plaintiff] complained about [Madera]. Absent adequate documentation of other credible evidence supporting the various downgrades, Ms. Madera failed to demonstrate by a preponderance of the evidence that she would have taken the same personnel action absent [Plaintiff's] EEO complaint.

Def.'s Ex. #2, Cornelius_ROI_10.

    40. The DoD-IG investigation determined that Plaintiff received a "lowered annual appraisal in reprisal for making a protected disclosure; specifically, for filing an Equal Employment Opportunity (EEO) complaint . . . ." Def.'s Ex. #2, Cornelius_ROI_10. The report found that Plaintiff had been retaliated against by Madera and recommended that Plaintiff's "performance appraisal for the period ending February 28, 2011, [be rescinded] and substitute a new appraisal that accurately reflects Complainant's job performance." Def.'s Ex. #2, Cornelius_ROI_10.

    41. On September 28, 2012, Michael L. Rhodes (Rhodes), Director of Administration and Management in the Department of Defense, directed that the United States Army take the following corrective action: that Plaintiff's annual performance appraisal for the period ending February 28,

2011, be rescinded and a new performance appraisal accurately reflecting Plaintiff's job performance replace it, and that appropriate disciplinary action be implemented against Madera by management officials at Fort Jackson. Def.'s Ex. #2, Cornelius_ROI_1.

42. When Plaintiff was not notified of the results of the DoD-IG investigation, he contacted the office of United States Senator Lindsey Graham in an effort to determine the outcome of the investigation.

43. On April 16, 2013, Plaintiff filed suit in this Court.

44. On March 14, 2014, the February 28, 2011 evaluation was rescinded, and Plaintiff was issued a new ADRDP evaluation for the period ending February 28, 2011. Plaintiff received an overall rating of "Excellent." Def.'s Ex. #2, Cornelius_OPF_36.

45. Madera and Edmond testified that they did not learn of the DoD-IG report until 2014, and that they changed the rating to "Excellent" at the direction of the Army Judge Advocate General (JAG) office. However, the new ADRDP evaluation rated Plaintiff "Unsatisfactory" in one category. Def.'s Ex. #2, Cornelius_OPF_36.

46. On March 14, 2014, Madera was issued a Reminder for her failure to provide any notes pertaining to Plaintiff's "drop in performance/conduct as requested by the DoD IG and for failing to conduct a mid-point review with [Plaintiff] pointing out his drop in performance/conduct." Def.'s Ex. #18.

**E. Wages and Achievement Awards**

47. Plaintiff was hired as a part-time NAF Maintenance Worker, under the NA-4749 pay plan, at grade 7, step 1, on February 28, 2008. As noted above, Army Regulation (AR) 215-3 sets out the Nonappropriated Funds Personnel Policy. AR 215-3 Section 3-5 explains that, as a federal

wage system (FWS) employee, Plaintiff was entitled to within grade increases (WGI), or "step" increases, so long as he met the eligibility requirements; that is, his annual performance rating must be "Satisfactory" or better. Plaintiff always received WGI in accordance with the AR 215-3, Table 3-2:3. Specifically, on August 25, 2008, which was 26 calendar weeks after he was hired, Plaintiff received a WGI to step 2 with an increase in pay. Def.'s Ex. #2, Cornelius_OPF_19. His next WGI was to Step 3 on March 4, 2010, 78 weeks later. Def.'s Ex. #2, Cornelius_OPF_29. The next WGI was to step 4 on March 1, 2012, 104 weeks later. Def.'s Ex. #2, Cornelius_OPF_40. The next WGI to step 5 occurred 104 weeks later, effective February 17, 2014. Def.'s Ex. #2, Cornelius_OPF_43.

48. The step increases authorized by AR 215-3 were provided to all employees whose evaluations were graded "Satisfactory" or higher. Plaintiff received the step increases in accordance with the schedule noted above, regardless of whether the preceding evaluation was "Satisfactory" or "Excellent."

49. Plaintiff also received wage increases as a result of Office of Personnel Management (OPM) Executive Orders. On July 17, 2008, during his first few months of employment, Plaintiff received a wage increase. Def.'s Ex. #2, Cornelius_OPF_18. This wage increase was in accordance with OPM Executive Order 5120.42 dated May 9, 2008. Similarly, on July 16, 2009, Plaintiff's wages were adjusted in accordance with OPM Executive Order 5120.39, dated May 8, 2009. Def.'s Ex. #2, Cornelius_OPF_24. Effective July 10, 2010, pursuant to this same OPM Executive Order 5120.39, dated May 7, 2010, Plaintiff again received a wage increase. Def.'s Ex. #2, Cornelius_OPF_32. On May 10, 2014, Plaintiff received a wage increase pursuant to the NAF Federal Wage System (FWS) schedule dated March 7, 2014. Def.'s Ex. #2, Cornelius_OPF_42.

50. The pay adjustments authorized by AR 215-3 and the OPM Executive Orders were

extended to all eligible employees. The OPM Executive Order pay adjustments were determined based on a community wage survey and extended to all employees in the affected job classifications. None of the WGIs or wage increases was tied to an "Excellent" or "Outstanding" performance review.

51. Army Regulation 215-3, Section 9-3, explains the qualifications for Special Achievement Awards. Subsection (b) explains that, when disciplinary action is pending, the award is not allowed: "b. The following requirements apply in authorizing a special achievement award based on SSP [sustained superior performance]: . . . . (4) Nomination for or approval of a special achievement award is not authorized when a disciplinary action is pending."

52. Because Plaintiff had received a Reminder on November 15, 2010, this disciplinary action was "active" on February 28, 2011 (the end of Plaintiff's performance period). Therefore, Plaintiff was not eligible for a Special Achievement Award following the 2011 APRDP.

53. Additionally, Madera did not recommend that any employee under her supervision in 2011 receive a Special Achievement Award.

54. Edmond reviewed the records of all employees on her staff for spring 2011 and only one employee received a Special Achievement Award. That employee received an "Outstanding" rating.

### IV. CONCLUSIONS OF LAW

#### A. Standard

55. "To establish a *prima facie* case of retaliation in contravention of Title VII, a plaintiff must prove (1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d. 264, 281 (4th Cir. 2015) (*en banc*) (internal

quotation marks and citation omitted). *See also Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 252 (4th Cir. May 21, 2015) (same). To satisfy the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). As to the third element, in the context of establishing a *prima facie* case of retaliation, Plaintiff only need show "a causal relationship between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 252. This is a somewhat lesser standard of proof than that which is required to establish pretext under the *McDonnell-Douglas*[4] burden-shifting framework. *See id.* at 251 (noting that "the causation standards for establishing a *prima facie* retaliation case and proving pretext are not identical.").[5]

56. Once Plaintiff establishes a *prima facie* case, there is a rebuttable presumption that he was the victim of unlawful retaliation. *See United States Postal Serv. v. Aikens*, 460 U.S. 711, 714 (1983) (Title VII context). To rebut this presumption, Defendant must, under the *McDonnell Douglas* framework, clearly set forth, through the introduction of admissible evidence, a legitimate, nonretaliatory reason for the treatment afforded Plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (ADEA context); *Aikens*, 460 U.S. at 714.

---

[4]*McDonnell-Douglas v. Green*, 411 U.S. 792 (1973).

[5]In *Foster*, the Fourth Circuit analyzed the impact of *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. __, 133 S. Ct. 2517 (2013), on the evidentiary standards of the *prima facie* case and the summary judgment stage of Title VII retaliation claims. The *Foster* court determined that while *Nassar* had eliminated the lessened "motivating factor" test for direct and indirect evidence retaliation cases (requiring that plaintiffs establish that retaliatory animus be the "but-for" cause of the challenged employment action to survive summary judgment), it did not impact "the causation prong of the *prima facie* case." *Foster*, 787 F.3d at 251.

14

57. The temporal relationship and proximity of the alleged retaliatory activity after Plaintiff engaged in protected activity may raise an inference of retaliatory animus. *See Clark Cnty. Sch. Dist. v. Breenen*, 532 U.S. 268, 273 (2001) (temporal proximity can provide proof of causation when the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" are "very close.").

58. Courts in the Fourth Circuit have generally found that actions which essentially amount to criticism of an employee such as performance evaluations, reprimands or warnings, and counseling are alone insufficient to constitute materially adverse employment actions under the *White* standard. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (affirming district court's grant of summary judgment to the defendant on a retaliation claim where "neither [plaintiff's] performance evaluation nor her removal from the alternate work schedule would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination' ") (quoting *White*, 548 U.S. at 68); *Lindsey-Grobes v. United Airlines, Inc.*, C/A No. GJH-14-00857, 2014 WL 5298030, at *11 (D. Md. Oct. 14, 2014) (finding that poor performance reviews, without allegation of injury, were insufficient to constitute a materially adverse action); *Charlot v. Donley*, C/A No. 3:11-579-MBS, 2014 WL 1319182, at *9 (D.S.C. Mar. 31, 2014) (finding that an unsuccessful performance evaluation, absent any allegations of detrimental impact, was insufficient to demonstrate a materially adverse action); *Altman v. McHugh*, C/A No. 5:11cv00061, 2012 WL 1190271, at *17-18 (W.D. Va. Apr. 9, 2012) (same); *Rease v. Zax, Inc.*, C/A No. 3:07-3601, 2009 WL 2998977, *7 (D.S.C. Sept. 17, 2009) (holding that warning notices and a poor performance review did not constitute a material adverse action under Title VII where they would not "deter a reasonable employee from initiating a charge of discrimination").

15

59. Accordingly, the issue here is whether Plaintiff's 2011 performance review constituted a materially adverse employment action. To satisfy this requirement, Plaintiff must show that a reasonable employee in Plaintiff's situation might well have been dissuaded from filing an EEO charge.

**B. Discussion**

60. The gist of Plaintiff's testimony at trial is that harassment by Madera caused him physical and emotional distress. The difficulty with this argument is that this case only concerns alleged retaliation in the 2011 performance appraisal. The underlying EEO complaint of harassment based upon gender discrimination was withdrawn as a part of the NSA entered into between Plaintiff and the Army in June 2011. *See* Pla.'s Ex. #10.

61. The parties do not dispute that Plaintiff's filing of an informal complaint on November 15, 2010, and then a formal EEO complaint on January 27, 2011, was protected activity under the statute.

62. When Plaintiff contacted the EEO office on November 15, 2010, he had received an EDG and a Reminder memorandum which would remain in his personnel file for a period of six months. As a consequence, he was not eligible for a Special Achievement Award, regardless of whether his APRDP rating was "Excellent" or some other rating.

63. Plaintiff's *prima facie* case fails because Plaintiff has failed to establish that he suffered a materially adverse employment action. A reasonable employee would not have believed that making or supporting a charge of discrimination would have affected his ability to receive a Special Achievement Award because of the pending Reminder memorandum which he had received earlier on November 15, 2010. The evidence reflects that the Reminder was placed in Plaintiff's suitability

16

file for a period of six months. Army Regulation 215-3, Section 9-3(b)(4) states that nominations for or approval of a Special Achievement Award is not authorized when a disciplinary action is pending. Therefore, Plaintiff was not eligible for a Special Achievement Award when Plaintiff's annual performance evaluation was conducted on April 1, 2011. Additionally, even when Plaintiff received "Excellent" performance evaluations in October 2009 and March 2010, the evidence reflects that Plaintiff did not receive a Special Achievement Award.

64. Second, a reasonable employee would not have believed that making or supporting a charge of discrimination would have affected his ability to receive a step (WGI) increase. These increases are driven by the date of Plaintiff's hiring – February 28, 2008 – and the schedule set forth in AR 215-3, Section 3-7, Table 3-2, and only require a "Satisfactory" rating. The evidence reflects that Plaintiff received every WGI for which he was eligible.

65. Third, a reasonable employee would not have believed that making or supporting a charge of discrimination would have affected his ability to receive periodic wage increases as these increases are authorized by OPM Executive Orders, and are extended to all eligible employees as long as there is no freeze in effect for wage increases. The evidence reflects that Plaintiff received all wage increases for which he was eligible regardless of whether he had a "Satisfactory" or "Excellent" rating.

66. For these reasons, Plaintiff has failed to show that a reasonable employee would have been dissuaded from filing or supporting an EEO complaint by the potential for a "Satisfactory" as opposed to "Excellent" annual performance rating. Thus, the 2011 appraisal did not constitute a materially adverse employment action.

67. Because Plaintiff has failed to make out a *prima facie* case of retaliation, Defendant is

entitled to judgment. Plaintiff's motion for monetary award damages, ECF No. 112, is moot.

## V. CONCLUSION

Based upon the evidence presented at trial as outlined above, the court finds Plaintiff has failed to establish his claim of retaliation. Accordingly, Plaintiff shall take nothing of Defendant and this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

                                            s/ Cameron McGowan Currie
                                            CAMERON MCGOWAN CURRIE
                                            SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 21, 2015